UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

CHRISTOPHER D. ARIOLA,

                Petitioner,

        V.

DARWIN LACLAIR,

                Respondent.

_____

**REPORT AND
RECOMMENDATION**

07-CV-57
(GLS /VEB)

## I. INTRODUCTION

Petitioner Christopher D. Ariola, acting *pro se*, commenced this action seeking
habeas corpus relief pursuant to 28 U.S.C. § 2254.  Petitioner is an inmate at the Franklin
Correctional Facility.  In 2002, he entered a plea of guilty in a New York State court to
Manslaughter in the First Degree and an unrelated count of Attempted Robbery in the Third
Degree.  Petitioner contends that his conviction was imposed in violation of his constitutional
rights and should therefore be vacated.

The Honorable Norman A. Mordue, Chief United States District Judge, referred the
instant case to this Court pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) for a report and
recommendation. (Docket No. 20).

## II. BACKGROUND

**A.**    **Facts**

On March 2, 2001, Petitioner killed his father, Anthony Ariola, in Syracuse, New

York.  (A at 37-39).[1]

Petitioner, who was sixteen (16) years old at the time,[2] lived with his father in Syracuse, New York.  On the evening of March 2, 2001, Petitioner and his father had an argument about the volume of a radio and Petitioner's father told him to move out. Petitioner stated that his father was drunk and that there was a history of his father mentally and physically abusing him.[3]  Petitioner's father struck Petitioner in the forehead and a physical altercation ensued.  Petitioner picked up a wooden bat and hit his father twice on the head. Petitioner's father fell to the floor and threatened to kill Petitioner.  Petitioner hit him with the bat a third time. Petitioner's father began to cough up blood and eventually died from his injuries.  (A 38-39).

Petitioner then dragged his father's body to the basement and wrapped it in a blanket and trash bag.  Petitioner cleaned the house, changed his clothes, and went bowling with a female friend.  When Petitioner returned home, he tried, unsuccessfully, to commit suicide by cutting his own wrists.  He then left the house again and went driving on Interstate 81, where he violently turned the steering wheel, causing the vehicle to roll over

---

[1]References preceded by "A" are to the pages of the appendix attached to Petitioner's brief before the Appellate Division found at (Docket No. 13, Exhibit K).  Specifically pages 37 through 39 of the appendix are Petitioner's statement to the police regarding the death of his father taken on March 3, 2001.

[2]According to the Department of Correctional Services website, Petitioner's date of birth is February 4, 1984.  See http://nysdocslookup.docs.state.ny.us

[3]According to an affidavit from the victim's sister and Petitioner's aunt, Maria Zettel, their own family was quite abusive and their own father was an alcoholic and abusive towards them as they were growing up.  She stated that her relationship with her brother Tony (the victim) was "unmanageable" over the years as he drank and used drugs.  She would frequently babysit Petitioner as he was growing up because his parents drank every day.  She states that her brother was a very abusive person.  Lastly, she states that if her brother, the victim, had gotten a hold of the baseball bat, she believes he would have killed Petitioner.  See (Docket No. 13, Exhibit K, Appendix at Exhibit A).  There is another similar affidavit from another family member confirming the victim's abusive nature.  See (Docket No. 13, Exhibit K, Appendix at Exhibit B).

several times.  Petitioner was transported to SUNY Upstate Hospital in Syracuse, and was treated and released without telling anyone that he killed his father.  (A 39).  After his release from the hospital, he walked to his former employer's store, where he confessed the killing to his former supervisor.  The supervisor called the police and Petitioner was later arrested at his home on March 3, 2001.  Thereafter, he was charged pursuant to a felony complaint with Manslaughter in the First Degree,  in violation of New York Penal Law ("NYPL") §125.20[4].

### B.    State Trial Court Proceedings

The Honorable William D. Walsh, Onondaga County Court Judge, presided over Petitioner's pre-trial and plea proceedings. On August 8, 2001, Judge Walsh directed that a competency examination pursuant to Criminal Procedure Law ("CPL") § 730.30[5] be conducted before Petitioner could consider any plea offers.[6] (Docket No. 13, Exhibit A). The examining doctors found that Petitioner was not competent to stand trial, and he was committed to the Rochester Psychiatric Center for ninety days.

Thereafter, on December 3, 2001, an Onondaga Grand Jury returned indictment No. 2001-0967-1, charging Petitioner with Manslaughter in the First Degree, in violation of NYPL §125.20, and Criminal Possession of a Weapon in the Fourth Degree, in violation of

---

[4]Unless otherwise indicated, all references to the NYPL are to McKinney 1998.

[5]CPL §730.30 sets forth the procedure for determining competency.

[6]The dialogue in the transcript indicates that the defense and the prosecution were in the process of working on a plea offer.

NYPL §265.01(2).[7] (Docket No. 13, Exhibit A at 16). As of December 17, 2001, Petitioner was still found to be incompetent according to the Rochester Psychiatric Center and Judge Walsh signed an order of observation, which adjudicated Petitioner as an "incapacitated person" and committed Petitioner for observation for a period of one year. (Docket No. 13, Exhibit A).

By August 31, 2002, two psychiatrists found Petitioner competent to stand trial, and he was released from the Rochester Psychiatric Center on October 4, 2002. Thereafter, Petitioner's attorney negotiated a plea agreement on his behalf.

On October 30, 2002, Petitioner appeared with counsel before Judge Walsh. (Docket No. 13, Exhibit B, (Plea Hearing)). After questioning by Judge Walsh to insure the plea was voluntary and knowing, Petitioner plead guilty to First Degree Manslaughter for the death of his father and he plead guilty to Attempted Third Degree Robbery[8] for the October 2000 attempt to steal jewelry from Joel Frick. (Docket No. 13, Exhibit B at 12-16).

On December 2, 2002, Judge Walsh sentenced Petitioner under the terms of the plea agreement to a seven (7) year determinate term with five (5) years of post-release supervision for his conviction of manslaughter and a concurrent, indeterminate, one (1) to three (3) year term for his conviction of third degree attempted robbery. (Docket No. 13,

---

[7]The weapon possession charge arose from Petitioner's October 2000 attempted robbery of an individual named Joel Frick and not from Petitioner's possession of the bat he used to kill his father.

[8]Petitioner was charged by Superior Court Information with the crime of Attempted Robbery in relation to the October 2000 Joel Frick incident. In return for waiving indictment on that charge, the plea agreement was that Petitioner's charge of Criminal Possession of a Weapon would be dismissed. See (Docket No. 13, Exhibit B).

4

Exhibit C at 15-16).[9]

## C.   State Appellate Proceedings

### 1.   Direct Appeal

In September of 2004, Petitioner, represented by Shirley K. Duffy, Esq., appealed his conviction to the Appellate Division, Fourth Department, of the New York State Supreme Court.   Petitioner, through his attorney, asserted four arguments before the Appellate Division: (1) Petitioner's guilty plea was not knowing, voluntary, and intelligent because he was coerced by the trial court; (2) the waiver of appeal was invalid and void as against public policy due to the court's coercion; (3) the trial court abused its discretion in denying Petitioner youthful offender status; and (4) Petitioner's trial counsel provided ineffective assistance by failing to explore a justification defense.   (Docket No. 13, Exhibit K).

Petitioner also submitted a  *pro se* supplemental brief asserting that "all the illegal acts done to Appellant in the lower Court are Unconstitutional, thus making his conviction illegal and future prosecution of Appellant barred." (Docket No. 13, Exhibit L at 2).

### 2.   First CPL §440.10

On July 21, 2004, while his direct appeal was pending, Petitioner moved *pro se* for a judgment vacating his conviction pursuant to CPL §440.10.   (Docket No. 13, Exhibit D). Petitioner argued that : (1) he received ineffective assistance of counsel; (2) his counsel coerced him into pleading guilty; (3) the trial court did not have jurisdiction over him; (4) the indictment was defective and insufficient; and (5) the trial court improperly imposed a

---

[9]Judge Walsh noted at sentencing that the charge of Criminal Possession of a Weapon was dismissed against Petitioner.

protective order against him at sentencing.

In a decision dated December 20, 2004, Judge Walsh denied Petitioner's motion. (Docket No. 13, Exhibit G).  The court cited CPL §440.10(2)(b) and (c), because the issues raised in the motion were pending on direct appeal, and also held that some of the issues had not been raised on direct appeal even though they could have been.

In a decision issued on February 4, 2005, the Appellate Division affirmed Petitioner's conviction.  People v.Ariola, 15 A.D.3d 882 (4th Dep't 2005).  The appeals court found that Petitioner failed to preserve his claim that his plea was unknowing and involuntary.  Further, the court also concluded that the claim was meritless.  Id.  The court also held that the remaining claims asserted in the brief filed by Petitioner's appellate attorney lacked merit.

Thereafter, Petitioner moved, pro se, for reargument on the grounds that the Appellate Division failed to consider the claims raised in his pro se appellate brief.  (Docket No. 13, Exhibit P).  In an order dated April 29, 2005, the Appellate Division granted Petitioner's motion for reargument and amended their decision.  The amended decision concluded that the claims in Petitioner's pro se brief were also without merit.  People v. Ariola, 17 A.D.3d 1172 (4th Dep't 2005).  Petitioner's application for leave to appeal to the Court of Appeals was denied on July 1, 2005.  People v.Ariola, 5 N.Y.3d 784 (2005).

### 3.      State Petition for Writ of Habeas Corpus

On March 3, 2005, Petitioner filed a pro se petition for a writ of habeas corpus in New York State Supreme Court, Washington County, arguing that the trial court failed to follow state statutory guidelines during his pre-trial competency proceedings.  (Docket No. 13, Exhibit T).  On August 9, 2005, the Washington County Supreme Court denied the motion, holding that his claims were raised and denied on direct appeal.  (Docket No. 13, Exhibit W).

6

Petitioner appealed that decision to the Appellate Division, Third Department, which affirmed the Supreme Court's decision on April 27, 2006. People ex rel. Ariola v. Greene, 28 A.D.3d 1038 (3d Dep't 2006).   Petitioner's application for leave to appeal to the Court of Appeals was denied on July 6, 2006.  People ex rel. Ariola v. Greene, 7 N.Y.3d 706 (2006).

### 4.      Writ of Error Coram Nobis

On August 2, 2005, Petitioner filed a *pro se* petition for a writ of error coram nobis claiming ineffective assistance of trial and appellate counsel.  (Docket No. 13, Exhibit AA). In an order dated November 10, 2005, the Appellate Division, Fourth Department denied the writ.  People v. Ariola, 23 A.D.3d 1162 (4th Dep't 2005).

### 5.      Second CPL §440.10

On June 1, 2006, Petitioner made a second CPL § 440.10 motion to vacate his conviction, arguing: (1) the trial court failed to follow statutory guidelines in conducting his competency hearing, and therefore did not have proper jurisdiction; (2) his plea was not knowing, voluntary, or intelligent and he was coerced into entering a plea by the court; (3) his conviction should be vacated because of prejudicial conduct; (4) he received ineffective assistance of counsel; and (5) his conviction should be vacated because "the entire circumstances of Defendant's case there [sic] rights were violated." (Docket No. 13, Exhibit FF).

In an order dated September 14, 2006, the trial court denied the motion.  The court found that the claims should be denied because they were "amply reviewed both upon direct appeal and by way of a writ of habeas corpus." (Docket No. 13, Exhibit II at 1).

7

**D.   Federal Habeas Corpus Proceedings**

Petitioner, proceeding *pro se*, commenced this action on January 16, 2007, by filing a Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Docket No. 1). Thereafter, Petitioner amended his petition in compliance with an Order issued by the Honorable Gary L. Sharpe, United States District Judge.  (Docket No. 3).  Petitioner asserts four grounds in his Amended Petition for habeas relief: (1) his due process rights were violated in the competency hearing; (2) his conviction was obtained without proper jurisdiction; (3) he received ineffective assistance of trial counsel; and (4) his plea was not made knowingly, voluntarily, or intelligently.

Thereafter, Respondent filed submissions in opposition to the Petition.  (Docket No. 12).   For the reasons stated below, this Court recommends that the Petition be DISMISSED.

## III. DISCUSSION

**A.      Federal Habeas Corpus Standard**

Federal habeas corpus review of a state court conviction is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under  AEDPA, federal courts must give substantial deference to a state court determination that has adjudicated a federal constitutional claim "on the merits."  28 U.S.C. § 2254(d); Sellan v. Kuhlman, 261 F.3d 303, 309-10 (2d Cir. 2001).  The Second Circuit has stated that an "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." Sellan, 261 F.3d at 313 (quotation omitted).  The Second

Circuit has also held that even a one-word denial of a petitioner's claim is sufficient to constitute an "adjudication on the merits" for purposes of AEDPA.  Id. at 312-313.

Specifically, AEDPA requires that where a state court has adjudicated the merits of a Petitioner's federal claim, habeas corpus relief may not be granted unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Both AEDPA and its predecessor statute recognize that a presumption of correctness shall apply to state court findings of fact, Whitaker v. Meachum, 123 F.3d 714, 715 n. 1 (2d Cir. 1997), and AEDPA requires a Petitioner to rebut that presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1); LanFranco v. Murray, 313 F.3d 112, 117 (2d Cir. 2002).  A presumption of correctness applies to findings by both state trial and appellate courts.  Galarza v. Keane, 252 F.3d 630, 635 (2d Cir. 2001); Whitaker, 123 F.3d at 715 n.1.

In Williams v. Taylor, 529 U.S. 362, 413 (2000), the Supreme Court defined the phrases "contrary to" and "unreasonable application of" clearly established federal law.  A state court decision is "contrary to clearly established federal law . . . if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."  Id.

A state court decision involves "an unreasonable application of" Supreme Court case

law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case." Id.

Under this standard, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 411. In order to grant the writ there must be "some increment of incorrectness beyond error," although "the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

**B.    Petitioner's Claims**

As set forth above, Petitioner asserts four claims for habeas relief. This Court will first address the voluntariness of Petitioner's guilty plea and then analyze his other claims in relation to that plea.

**1.    Voluntariness of Guilty Plea**

Petitioner asserts that his guilty plea was not made voluntarily and/or with an understanding of the consequences of the plea. Specifically, Petitioner asserts that he was coerced into pleading guilty by his trial counsel and the trial court. Respondent argues that this claim is (a) procedurally defaulted under the "adequate and independent state ground" doctrine, (b) barred by Petitioner's waiver of right to appeal, and (c) not supported by the

record.

### a.    Procedural Bar

When addressing this claim on direct review, the Appellate Division found that it was "not preserved for [their] review[.]" Ariola, 15 A.D.3d. at 882 (citing People v. Coleman, 8 A.D.3d 825, 778 N.Y.S.2d 576)(holding that claim of involuntary plea is not preserved where appellant failed to move to withdraw his plea or to vacate judgment of conviction on that ground).

The Supreme Court has held that federal courts shall "not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (citations omitted). "This rule applies whether the state law ground is substantive or procedural." Id. (citations omitted).

The independent and adequate state ground doctrine may bar federal habeas review "when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement" for in such cases "the state judgment rests on independent and adequate state procedural grounds." Id. (citing, inter alia, Wainwright v. Sykes, 433 U.S. 72, 81, 87, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)).

Thus, an adequate and independent finding of procedural default precludes federal habeas review of the federal claim, unless the habeas petitioner can show "cause" for the default and "prejudice" attributable thereto, Murray v. Carrier, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or demonstrate that the failure to consider the federal claim on habeas will result in a "fundamental miscarriage of justice,' " id. at 495, 106 S.Ct. 2639

11

(quoting Engle v. Isaac, 456 U.S. 107, 135, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982)).

"[A] procedural bar will be deemed 'adequate' only if it is based on a rule that is 'firmly established and regularly followed' by the state in question." Garcia v. Lewis, 188 F.3d 71, 77 (2d Cir.1999) (quoting Ford v. Georgia, 498 U.S. 411, 423-24, 111 S.Ct. 850, 112 L.Ed.2d 935 (1991)).

Whether application of the procedural rule is "'firmly established and regularly followed' " must be judged in the context of "the specific circumstances presented in the case," and "of the asserted state interest in applying the procedural rule in such circumstances." Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir.2003) (quoting Lee v. Kemna, 534 U.S. 362, 386-87, 122 S.Ct. 877, 151 L.Ed.2d 820 (2002)).

In New York, the "firmly established and regularly followed rule," Lee, 534 U.S. at 386, 122 S.Ct. 877, for preserving a claim that a guilty plea was involuntarily entered requires a defendant to move to withdraw the plea or to move to vacate the judgment of conviction. See People v. Hilliard, 39 A.D.3d 1021, 832 N.Y.S.2d 461, 2007 WL 1147311, at *1 (App.Div.3d Dept. Apr. 19, 2007) ("[D]efendant's assertion that his guilty plea was involuntarily entered is unpreserved for our review in light of his failure to move to withdraw the plea or vacate the judgment of conviction[.]"); People v. Smith, 34 A.D.3d 1127, 1127, 824 N.Y.S.2d 504 (App.Div.3d Dept.2006); People v. Peterson, 35 A.D.3d 1195, 1196, 825 N.Y.S.2d 622 (App.Div. 4th Dept.2006) ("Although the contention of defendant that his plea was not knowingly, voluntarily or intelligently entered survives the waiver of the right to appeal, by failing to move to withdraw his plea or to vacate the judgment, defendant failed to preserve that contention for our review[.]"); People v. Johnson, 25 A.D.3d 331, 331, 805 N.Y.S.2d 830 (App.Div. 1st Dept.2006) ("Since defendant did not move to withdraw his plea,

his challenge to the plea's voluntariness is unpreserved[.]").

However, as the Second Circuit has noted, the habeas court's "responsibility to ensure that the state rule is 'adequate' obligates [the court] to examine the basis for an application of state law." Garcia, 188 F.3d at 77; see also Cotto v. Herbert, 331 F.3d 217, 239 (2d Cir. 2003) ("Before accepting a procedural bar defense, a federal court must examine the adequacy of the alleged procedural default.").

Where the petitioner clearly complied with the applicable state procedural rule, the bar asserted by the state court will not preclude federal habeas review. See Sanford v. Burge, 334 F.Supp.2d 289, 298-300 (E.D.N.Y. 2004); Cotto, 331 F.3d at 240 (citing Lee v. Kemna, 534 U.S. 362, 376, 122 S.Ct. 877, 885, 151 L.Ed.2d 820 (2002)).

In this case, contrary to the Appellate Division's finding, Petitioner's CPL § 440 motion, liberally construed, did raise the issues of coercion and lack of voluntariness with respect to his plea.  (Docket No. 13, Exhibit D "Affidavit" at ¶ 4).  Although Petitioner's *pro se* motion stated that the ground for relief was ineffective assistance of counsel, Petitioner claimed that his counsel was ineffective for having coerced him into accepting his plea. (Id.).  Given the liberal construction afforded to *pro se* pleadings, this Court finds that this allegation was sufficient to raise a claim as to whether the plea was knowing and voluntary.

As such, in this particular case, this Court finds that the procedural bar cited by the Appellate Division does not preclude federal habeas review of the merits of Petitioner's claim.  See Murden v. Artuz, 253 F. Supp. 2d 376, 385-86 (E.D.N.Y. 2001) (addressing claim on the merits because there was "some question as to the adequacy of the Appellate Division's reliance on a procedural bar"); see also Williams v. Lane, 826 F.2d 654, 659-61 (7th Cir. 1987) (holding that state court finding of procedural default did not bar review where

record showed that defense counsel had made necessary objection at trial).

Accordingly, the Court will review the merits of Petitioner's claim regarding the voluntariness of his plea.

### b.    Merits of Petitioner's Voluntariness Claim

Because a "plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence[,]" review of the conviction is "ordinarily confined to whether the underlying plea was both counseled and voluntary." United States v. Broce, 488 U.S. 563, 569, 109 S.Ct. 757, 762, 102 L.Ed.2d 927 (1989); see also Mabry v. Johnson, 467 U.S. 504, 508, 104 S.Ct. 2543, 2546-47, 81 L.Ed.2d 437 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by  an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

### i.    Competency

Although Petitioner does not appear to be contesting the finding that he was mentally competent to enter a guilty plea, because Petitioner is proceeding *pro se* and makes allegations concerning his psychiatric treatment, this Court will nevertheless review the issue of competency.

The "constitutional right to due process is violated when a person who is incompetent is convicted of a crime, whether the conviction follows a trial or a plea of guilty." Harris v. Kuhlmann, 346 F.3d 330, 349 (2d Cir.2003) (citing Cooper v. Oklahoma, 517 U.S. 348, 354 (1996)). To satisfy due process, a defendant must have the ability to "to consult with his lawyer with a reasonable degree of rational understanding and a rational as well as factual

14

understanding of the proceedings against him." Id. (quoting Cooper v. Oklahoma, 517 U.S. at 354).

On habeas review, a state court's competency determination is entitled to a presumption of correctness. Demosthenes v. Baal, 495 U.S. 731, 735 (1990); see Francis v. Stone, 221 F.3d 100 (2d Cir. 2000). In this regard, it is well-settled that the determination as to "whether a defendant is competent to stand trial is within the discretion of the trial court, and that decision is entitled to deference." Galusha v. Duncan, No. 02-CV-1602, WL 4198272, at *9 -10 (N.D.N.Y. Nov. 21, 2007) (collecting cases).

"A federal court may not overturn such determinations unless it concludes that they are not 'fairly supported by the record.'" Id. (citing 28 U.S.C. § 2254(d)(8)); see also, Murphy v. Kelly, 99 F.3d 401 (2d Cir. 1995)("The factual findings of trial and appellate state courts are entitled to a presumption of correctness in federal habeas proceedings[.]").

In the present case, the trial court's conclusion that Petitioner was competent to plea guilty is fairly supported by the record. Two psychiatrists examined Petitioner in August of 2002 determined that he was competent. The trial court also had the opportunity to observe Petitioner in court and throughly questioned him on the record, reviewing the terms of the plea agreement and confirming Petitioner's understanding of those terms. (Docket No. 13, Exhibit B, at p. 5-7, 9-16). Petitioner appeared at the plea allocution with his trial counsel, who advised the court that he had spoken with Petitioner on several occasions and was "confident" that Petitioner "does understand exactly what is going on here today." (Docket No. 13, Exhibit B, at p. 5). Petitioner signed the Waiver of Indictment in open court and told the court that he had reviewed the Waiver with his attorney and that he had no questions concerning the same. (Docket No. 13, Exhibit B, at p. 6-7).

15

In light of the foregoing, this Court finds that the trial court's determination with regard to Petitioner's competency was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  Accordingly, even if the *pro se* Petition is liberally construed as raising a challenge to the competency determination, Petitioner would not be entitled to habeas relief on that basis.

### ii.    Voluntariness in Fact

In Tollett v. Henderson, a seminal case on voluntariness, the Supreme Court noted that "[t]he focus of federal habeas inquiry is the nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." 411 U.S.258, 266 (1973); see also North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (stating that relevant inquiry for the federal habeas court was whether the guilty plea "represent[ed] a voluntary and intelligent choice among the alternative courses of action open to the defendant").

If a petitioner pleads guilty based "on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" Id. (quoting McMann v. Richardson, 397 U.S. 759, 771(1970)).

The "test for determining the [constitutional] validity of guilty pleas ... was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. at 31; accord, e.g., Kelleher v. Henderson, 531 F.2d 78, 81 (2d Cir.1976); Wilson v. McGinnis, 413 F.3d 196, 198-99 (2d Cir.2005).

In the present case, as noted above, the Appellate Division concluded that Petitioner's claim concerning his guilty plea was unpreserved.  In addition, the Appellate

Division further concluded that the claim was "lacking in merit." <u>Ariola</u>, 789 N.Y.S.2d at 389. For the following reasons, this Court finds that Petitioner has not established that the Appellate Division's decision in this regard was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A review of the transcript from the plea hearing reveals that Petitioner was informed of and knew what he was doing when he pled guilty. The terms of the plea agreement were discussed on the record. (Docket No. 13, Exhibit B at 3-5). The trial court then reminded Petitioner of his right to have the case tried, but that if he accepted the plea agreement and entered a plea of guilty, he would waive those rights, and Petitioner stated that he understood the consequences of his plea. (<u>Id</u>. at 6-7).

Petitioner, while under oath and represented by counsel, stated that his guilty plea was voluntary and that he had not been coerced. (<u>Id</u>. at 10-11). The trial court asked a number of questions to ensure that Petitioner understood what his guilty plea would mean. The trial court again reminded Petitioner of his right to a trial by jury, and that his plea was equal to a conviction after trial. (<u>Id</u>. at 11-12). Petitioner stated that he was very satisfied with his attorney's services. (<u>Id</u>. at 12). The trial court then reviewed the sentencing possibilities as well as the waiver of appeal before Petitioner plead guilty. (<u>Id</u>. at 13-14). There is nothing in the record to indicate that Petitioner's decision to plead guilty was anything but knowing, voluntary, and intelligent.

Furthermore, Petitioner has not provided credible evidence that would justify overlooking his statements under oath that he was choosing to plead guilty of his own

17

accord. In the context of a plea allocution, a defendant's "[s]olemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977); accord, e.g., Adames v. United States, 171 F.3d 728, 732 (2d Cir.1999). Such statements "are generally treated as conclusive in the face of the defendant's later attempt to contradict them." Adames v. United States, 171 F.3d 728, 732 (2d Cir.1999) (citing United States v. Gonzalez, 970 F.2d 1095, 1101 (2d Cir.1992) (no evidentiary hearing necessary where criminal defendant makes allegations that simply contradict his statements made under oath at plea allocution); United States v. Bambulas, 571 F.2d 525, 526 (10th Cir.1978) (holding that statements at plea allocution are conclusive absent credible reason "justifying departure from their apparent truth")).

Petitioner's unsupported allegations that he was coerced into pleading guilty are not sufficient to warrant relief.  See United States v. Torres, 129 F.3d 710, 715-17 (2d Cir.1997) (finding that claims that a guilty plea was involuntary were properly denied when contradicted by plea allocution that defendant was not coerced or pressured into pleading guilty); see also United States v. Hernandez, 242 F.3d 110, 112-13 (2d Cir.2001). Petitioner's claim appears to be based upon "the legal equivalent of buyer's remorse." Contino v. United States, 07 Civ. 7084, 2007 WL 4591999, at *7 (S.D.N.Y. Dec. 28, 2007) (quoting Powell v. Omnicom, 497 F.3d 124, 127 (2d Cir.2007)).

For the foregoing reasons, this Court finds that Petitioner's habeas corpus challenge to his plea agreement should be DENIED.

### 2.    Remaining Grounds- Effect of Guilty Plea

As set forth above, it is well-settled that a defendant's properly counseled and

18

entered plea of guilty admits all of the elements of a formal criminal charge and waives a multitude of federal constitutional rights. Tollett v. Henderson, 411 U.S. at 267.

The rights waived include the privilege against compulsory self-incrimination, the right to confront one's accusers, the right to a jury trial, the right to a speedy trial, and the right to require the prosecutor to prove the crime beyond a reasonable doubt. Id.; accord, e.g., Miller v. Angliker, 848 F.2d 1312, 1319 (2d Cir.), cert. denied, 488 U.S. 890, 109 S.Ct. 224, 102 L.Ed.2d 214 (1988).  As the United States Supreme Court has explained,

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann [v. Richardson, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) ].

Tollett , 411 U.S. at 267; accord United States v. Coffin, 76 F.3d 494, 497 (2d Cir.1996) ("A defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea. 'He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [acceptable] standards.' ") (quoting Tollett, 411 U.S. at 267) (alteration in original)); see also United States v. Garcia, 339 F.3d 116, 117 (2d Cir.2003) ( per curiam ) ("It is well settled that a defendant who knowingly and voluntarily enters a guilty plea waives all non-jurisdictional defects in the prior proceedings."); Whitehead v. Senkowski, 943 F.2d 230, 233 (2d Cir.1991) ("Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea.").  Thus, an inquiry into Petitioner's

19

remaining claims in light of his guilty plea becomes necessary here:

### a.    Ground One: Competency Hearing and Grand Jury Infirmities

In Petitioner's first claim for habeas relief, he argues that his due process rights were violated during the state court competency proceedings. While Petitioner's argument with respect to this claim is unclear, it appears that he is contesting the fact that he was ordered to undergo a competency exam.   He asserts that the exam was conducted in an "unprofessional manner," and that as a result, he was committed to psychiatric care against his will. See (Docket No. 18).   Petitioner also asserts that his grand jury proceedings and indictment were in error. Respondent argues that this claim for habeas relief is unexhausted because Petitioner failed to raise it in state court in federal constitutional terms, that Petitioner cannot be entitled to habeas relief because his claims arose prior to the entry of his knowing, voluntary, and intelligent guilty plea, and that in any event, the claims are meritless.

### i.    Competency Hearing

Compelling an incompetent person[10] to stand trial is a violation of that person's constitutional right to due process. Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).  The failure to hold a competency hearing when the evidence warrants one is also unconstitutional. See Nicks v. United States, 955 F.2d 161, 167 (2d Cir.1992). Habeas corpus relief has been granted by Federal courts where the trial court has failed to

---

[10]New York law defines an incompetent person as someone who "as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense." N.Y. CPL § 730.10(1). The inquiry under federal law is "whether the [defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." Dusky v. United States, 362 U.S. 402, 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960).

hold competency hearings when there is sufficient evidence in the record to obligate the court to examine the defendant's fitness to stand trial. See Pate, 383 U.S. at 386, 86 S.Ct. at 842-43; Silverstein v. Henderson, 706 F.2d 361, 369 (2d Cir.1983), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983).

In this case, the trial court ordered a competency exam after Petitioner's trial counsel requested such an exam in August of 2001. Thereafter, Petitioner was examined by two doctors who found that he was incompetent to stand trial. Petitioner was then committed to the Rochester Psychiatric Center ("RPC") for ninety days of observation and treatment. On December 3, 2001, an indictment was returned against Petitioner and as of December 17, 2001, the staff at the RPC determined that Petitioner remained incompetent. (Docket No. 13, Exhibit A). Later, on August 31, 2002, two psychiatrists found Petitioner competent to stand trial and thereafter, his plea agreement was negotiated.

Petitioner asserts that his exam was conducted in an "unprofessional manner" and that the he was treated abusively while at the Rochester Psychiatric Center and that CPL §730.30 was violated. However, federal habeas corpus relief will not issue to rectify errors of state constitutional, statutory, or procedural law unless a federal constitutional issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a federal habeas court to re-examine state court determinations of state law.).

In any event, Petitioner offers no argument to suggest that any alleged wrong committed in connection with the competency hearing violated his federal constitutional rights. Moreover, Petitioner has not established that any alleged error with respect to the

competency hearing might even arguably provide a basis for overturning his conviction pursuant to a plea of guilty. Finally, because Petitioner's competency hearing took place before entry of his guilty plea, he has waived his right to challenge that hearing. Tollett, 411 U.S. at 267.

## ii.    Grand Jury Proceedings

Although Petitioner's allegations with respect to this claim are also unclear, to the extent that Petitioner challenges the grand jury proceedings, such claims are not cognizable on habeas review.  Petitioner claims that he was not notified of the grand jury proceedings and therefore the indictment was unlawful.  (Docket No. 18 at 11-12).

As set forth above, after a judgment of conviction has been entered upon the defendant's plea of guilty, the defendant may not raise non-jurisdictional challenges to the indictment either on direct appeal or by collateral attack through a federal habeas proceeding. Hayle v. United States, 815 F.2d 879, 881 (2d Cir. 1987) (citations omitted). As the Second Circuit has stated on many occasions, "[i]t is well settled that a defendant's plea of guilty admits all of the elements of a formal criminal charge. Hayle, 815 F.2d at 881 (citation omitted); accord, e.g., United States v. Calderon, 243 F.3d 587, 590 (2d Cir.2001); United States v. Garcia, 339 F.3d 116, 117 (2d Cir.2003).

Furthermore, alleged errors in a state grand jury proceeding have been held to be not cognizable on federal habeas review.  In Lopez v. Riley, 865 F.2d 30, 32 (2d Cir.1989), the Second Circuit considered whether claimed errors in a grand jury proceeding, including insufficiency of the evidence to support the indictment and the prosecutor's failure to present exculpatory evidence, are cognizable in a habeas corpus proceeding. The Second Circuit held that such challenges to a state grand jury proceeding do not state a basis for federal

22

habeas relief, finding dispositive the Supreme Court's holding in United States v. Mechanik, 475 U.S. 66, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986). In Mechanik, the Supreme Court rejected defendants' constitutional attack on their federal grand jury proceeding, finding that

> the petit jury's subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt. Measured by the petit jury's verdict, then, any error in the grand jury proceeding connected with the charging decision was harmless beyond a reasonable doubt.

Id. at 70 (footnote omitted). Based on the above-quoted reasoning from Mechanik, the Second Circuit held in Lopez that "[i]f federal grand jury rights are not cognizable on direct appeal where rendered harmless by a petit jury, similar claims concerning a state grand jury proceeding are a fortiori foreclosed in a collateral attack brought in federal court." Lopez, 865 F.2d at 32.

Courts in this Circuit have held that Lopez's reasoning applies equally to a conviction based on a plea of guilty and accordingly have held that a defendant's guilty plea cured any possible deficiency in the grand jury proceeding. See, e.g., Hutchings v. Herbert, 260 F.Supp.2d 571 (W.D.N.Y.2003); Alston v. Ricks, 2003 WL 42144, at *7 (S.D.N.Y. Jan.3, 2003) (holding that guilty plea precluded petitioner's claim regarding prosecutorial misconduct before the grand jury); Ballard v. Costello, 2001 WL 1388297, at *8 (E.D.N.Y. Nov.2, 2001) (holding that "[petitioner's] guilty pleas cured any possible deficiencies in the grand jury proceeding").  In other words, where a habeas petitioner has entered a voluntary and knowing guilty plea while represented by competent counsel, any non-jurisdictional defects, including defects with regard to grand jury proceedings, are waived. See Jordan v. Dufrain, No. 98 Civ. 4166(MBM), 2003 WL 1740439, at *3 (S.D.N.Y. Apr.2, 2003)

23

(concluding that the petitioner had "admitted his guilt when he entered his guilty plea, and thus any errors in the grand jury proceedings were rendered harmless") (citing, inter alia, Alston v. Ricks, No. 01 Civ. 9862(GWG), 2003 WL 42144, at *7 (S.D.N.Y. Jan.7, 2003) ("[A] guilty plea extinguishes the ability of a habeas petitioner to raise a claim regarding misconduct before a grand jury."); Lloyd v. Walker, 771 F.Supp. 570, 576-77 (E.D.N.Y.1991) ("Having admitted to the factual basis of the charges against him upon entering a plea of guilty, any error in the proceeding which led to his indictment is, as Lopez v. Riley teaches, rendered harmless, and is not a cognizable claim in a federal habeas proceeding.").

Accordingly, Petitioner's claim for habeas relief with respect to his grand jury proceedings[11] and indictment should be DISMISSED.


### b.    Ground Two - Jurisdiction

Petitioner further claims that his conviction was obtained without jurisdiction, and that the trial court failed to "file a certificate and [held] the Petitioner unlawfully in the psychiatric center without jurisdiction."  (Docket No. 18 at 14).  Petitioner claims that his original commitment to the Rochester Psychiatric Center ("RPC") was done without jurisdiction and therefore his commitment was unlawful and the subsequent actions and guilty plea were done without jurisdiction and therefore should be vacated.

Petitioner asserts that the trial court had no jurisdiction to have him sent to the RPC for observation and treatment.  However, the trial court, pursuant to CPL §730.30, had

---

[11]Additionally CPL §730.40(3) provides that:
> When a local criminal court has issued an order of examination or a temporary order of observation, and when the charge or charges contained in the accusatory instrument are subsequently presented to a grand jury, such grand jury need not hear the defendant pursuant to section 190.50.

Petitioner examined for purposes of determining his competency to stand trial.[12]   Once it was determined that Petitioner was incompetent to stand trial, the court had him committed for observation and treatment pursuant to CPL §§ 730.40(2), 730.50.

Petitioner further claims that he was committed to RPC for ninety days of observation and treatment on August 31, 2001, and that he should have therefore been released by November 28, 2001, or that a certificate should have been filed to extend his stay.  (Docket No. 18 at 14).

However, these arguments relate to New York State law and fail to allege federal constitutional issues.  As set forth above, federal habeas corpus relief will not issue to rectify errors of state constitutional, statutory, or procedural law unless a federal constitutional issue is also presented. See Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (A federal habeas court "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States;" it is not the province of a

_____

[12] New York Criminal Procedure Law § 730.30, which establishes the procedure for determining competency, provides that:

> 1. At any time after a defendant is arraigned upon an accusatory instrument other than a felony complaint and before the imposition of sentence, or at any time after a defendant is arraigned upon a felony complaint and before he is held for the action of the grand jury, the court wherein the criminal action is pending must issue an order of examination when it is of the opinion that the defendant may be an incapacitated person.

> 2. When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is not an incapacitated person, the court may, on its own motion, conduct a hearing to determine the issue of capacity, and it must conduct a hearing upon motion therefor by the defendant or by the district attorney.

> 3. When the examination reports submitted to the court show that each psychiatric examiner is of the opinion that the defendant is an incapacitated person, the court may, on its own motion, conduct a hearing to determine the issue of capacity and it must conduct such hearing upon motion therefor by the defendant or by the district attorney.

federal habeas court to re-examine state court determinations of state law.).  In any event, Petitioner does not offer any cognizable claim with respect to the jurisdiction of the trial court to accept his plea of guilty to the crimes charged.

Accordingly, Petitioner's request for habeas relief with respect to this claim should also be DENIED.


### c.    Ground Three- Ineffective Assistance of Counsel

In Petitioner's third ground for habeas relief, he asserts that he was deprived of the effective assistance of counsel due to his lawyer's failure to raise "essential pre-trial motions, failing to advocate for Petitioner's rights in psychiatric and grand jury proceedings, and forcing the Petitioner to plea [sic] without presented [sic] the cause and defense of Petitioner in any manner." (Docket No. 4 at 6).  Specifically, Petitioner contends that his trial counsel failed to raise speedy trial claims, search and seizure issues, unlawful arrest issues, and to raise a justification defense.

To the extent that this claim is asserting Fourth Amendment violations, it must be dismissed.  As set forth above, because Petitioner's arrest occurred prior to the entry of his guilty plea and because it is a non-jurisdictional issue, Petitioner's Fourth Amendment claim regarding search and seizure and unlawful arrest was waived by entry of his guilty plea. LaMagna v. United States, 646 F.2d at 778.

In any event, to prevail on an ineffective assistance of counsel claim, Petitioner cannot satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that

counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687. In order to establish that counsel's performance was constitutionally deficient, the petitioner must demonstrate that the representation he received "fell below an objective standard of reasonableness." Id. at 687-88.

Second, the petitioner must show that counsel's deficient performance prejudiced his defense. Id. at 692. To demonstrate prejudice, Petitioner must prove that, "but for" counsel's errors, there was a reasonable probability that the outcome of the proceeding would have been different. Id. at 694. Failure to satisfy either requirement of Strickland is fatal to a petitioner's claim of ineffective assistance. See id. at 696 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.").

The Strickland standard applies to claims of ineffective assistance raised by defendants convicted pursuant to a guilty plea. See Hill v. Lockhart, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); accord, e.g., United States v. Couto, 311 F.3d 179, 187 (2d Cir.2003).  In the context of a guilty plea, the prejudice inquiry "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." Hill, 474 U.S. at 59.  To demonstrate "prejudice," the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id.

As the Second Circuit has noted, "an evaluation of ineffective assistance of counsel usually begins with an examination of the strength of the Government's case." United States v. Helgesen, 669 F.2d 69, 71 (2d Cir.1982).

Based upon this Court's review of the record, Petitioner has failed to establish

27

convincing proof of any actual weaknesses in his case which his attorney disregarded; to the contrary, it appears that the prosecution had a fairly substantial amount of credible proof against Petitioner, including his own oral inculpatory statement that he killed his father. Counsel's advice to Petitioner to plead guilty, given the charges against him, the strength of the prosecution's case, and the offer extended to him, "was within the range of competence demanded of attorneys in criminal cases." McMann v. Richardson, 397 U.S. at 771.  Petitioner argues that his trial counsel failed to give appropriate emphasis to a possible justification defense.  Although the apparent history of abuse by Petitioner's father would likely have been helpful in this regard, defense counsel could have reached the reasonable conclusion that the number of blows struck by Petitioner (three), combined with Petitioner's conduct following the death of his father (e.g. hiding the body, going bowling with a female friend), would have posed substantial impediments to such a defense.

Moreover, Petitioner obtained, with his attorney's assistance, a favorable plea agreement.  He pled guilty to Manslaughter in the First Degree, which is punishable by up to twenty-five (25) years imprisonment.  In exchange for his plea of guilty, he was sentenced to only seven years.  (Docket No. 13, Exhibit C at 15-16).  Additionally, in exchange for his plea to Attempted Robbery in the First Degree, he was sentenced to a concurrent term of one to three years.  (Id. at 16). Lastly, the charge against Petitioner for Criminal Possession of a Weapon was dismissed.  (Id.).

Because Petitioner received a much more favorable sentence then if he had proceeded to trial and been convicted on the charges in the indictment, he has experienced no prejudice.  See Feliz v. United States, 2002 WL 1964347, *7 (S.D.N.Y.) ("No prejudice exists when a plea agreement lessens the severity of the sentence the defendant would face

if convicted at trial.") (citing <u>Moran v. United States</u>, No. 96 Civ. 3657, 1998 WL 54616, at

*5 (S.D.N.Y. Feb.10, 1998)); <u>Scott v. Superintendent, Mid-Orange Corr. Fac.</u>, 2006 WL

3095760, *9 (E.D.N.Y. Oct.31, 2006)).

　　Finally, the Court notes that Petitioner explicitly stated in his allocution that he fully

understood the consequences of his plea and that he had chosen to plead guilty voluntarily

after consultation with his attorney. (Docket No. 13, Exhibit B at 5-7, 9-10, 12 ).  When

asked by the trial court at the plea allocution whether he was satisfied with his attorney's

services, Petitioner responded: "Very much so, sir."  (<u>Id.</u> at 12).

　　A district court on habeas review may rely on a petitioner's sworn statements and

hold him to them. <u>See</u> <u>Blackledge v. Allison</u>, 431 U.S. 63, 74, 97 S.Ct. 1621, 52 L.Ed.2d 136

(1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at ... a [plea]

hearing, as well as any findings made by the judge accepting the plea, constitute a

formidable barrier in any subsequent collateral proceedings. Solemn declarations in open

court carry a strong presumption of verity. The subsequent presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal, as are contentions

that in the face of the record are wholly incredible.") (citations omitted).

　　Petitioner's claim of ineffective assistance of counsel appears to be based on nothing

more than his after-the-fact dissatisfaction with the prosecution's plea offer and the resultant

term of incarceration, which does not constitute a valid basis on which to find that his

counsel was ineffective. <u>Accord</u> <u>Albanese</u>, 415 F.Supp.2d at 254 (citing <u>United States v.</u>

<u>Garguilo</u>, 324 F.2d 795, 797 (2d Cir.1963) ("A convicted defendant is a dissatisfied client,

and the very fact of his conviction will seem to him proof positive of his counsel's

incompetence.")).  Accordingly, the Court recommends that Petitioner's claim that he

received ineffective assistance of counsel be DENIED as without merit.

## IV. CONCLUSION

For the reasons stated above, the Court recommends Christopher Ariola's  petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 be denied and that the Petition be dismissed.  Because Petitioner has failed to make a substantial showing of a denial of a constitutional right, I recommend that a certificate of appealability not issue.  See 28 U.S.C. § 2253(c)(2) (1996).

Respectfully submitted,

DATED:        February 20, 2008

Victor E. Bianchini
United States Magistrate Judge

Syracuse, New York

## V. ORDERS

Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b)**

30

of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

February 20, 2008

Victor E. Bianchini
United States Magistrate Judge